UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMITRIUS DANIELS,

       Plaintiff,

vs.

       Case No. 17-10209
       HON. GEORGE CARAM STEEH

ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

       Defendant.
_____/

OPINION AND ORDER GRANTING IN PART DEFENDANT'S
MOTION TO DISMISS (DOC. 21) AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 22)

Plaintiff Demitrius Daniels sued defendant Esurance Property and Casualty Insurance Company for payment of expenses arising out of an automobile accident on October 18, 2016. The matter is presently before the Court on Esurance's motion to dismiss, (Doc. 21), and motion for summary judgment, (Doc. 22). Oral argument was held on April 16, 2018. For the reasons stated below, Esurance's motion to dismiss is GRANTED IN PART and Esurance's motion for summary judgment is DENIED.

## I. Background

Mr. Daniels was involved in an automobile accident on August 27, 2014. Mr. Daniels thereafter filed a claim with his insurer, Liberty Mutual, for benefits including attendant care and household replacement services.

Mr. Daniels purchased an Esurance auto policy in 2016. Mr. Daniels was involved in another automobile accident on October 18, 2016 and submitted a PIP claim with Esurance. (Doc. 1-2 at PageID 11). Mr. Daniels filed this lawsuit in Wayne County Circuit Court on December 19, 2016. (Doc. 1-2). Esurance removed the lawsuit on January 23, 2017. (Doc. 1). On March 9, 2017, the Court entered a scheduling order with a discovery cut-off date of September 29, 2017. (Doc. 6 at PageID 50).

Mr. Daniels claimed that his cousin, Ms. Senitra Daniels provided household replacement services and attendant care following the accident. (Doc. 22-20; 24-4). Esurance sought to depose Ms. Senitra Daniels. The parties initially scheduled Ms. Daniels' deposition for May 30, 2017. (Doc. 21-20 at PageID 570). Ms. Daniels' appeared on May 30, 2017, but the parties adjourned her deposition due to concerns about Mr. Daniels' mental health. Ms. Daniels' deposition was rescheduled for June 30, 2017. (Doc. 21-21 at PageID 573). Mr. Daniels' deposition was scheduled for the same date. The parties deposed Mr. Daniels for several hours and, near the end

of the business day, agreed to adjourn Ms. Daniels' deposition. The parties stipulated to extend discovery on September 7, 2017. (Doc. 14). Ms. Daniels' deposition was rescheduled for September 19, 2017. (Doc. 21-21 at PageID 575). Mr. Daniels' counsel acknowledges that he adjourned this date. (Doc. 26 at PageID 1464; 1467). The parties rescheduled Ms. Daniels' deposition for September 21, 2017. (Doc. 21-21 at PageID 577). Shortly before that date, Esurance messaged Mr. Daniels' attorney to confirm the deposition. (Doc. 21-22 at PageID 584). Mr. Daniels' attorney could not confirm Ms. Daniels' presence and the parties canceled Ms. Daniels' fourth deposition date. (Doc. 21-22 at PageID 580).

Esurance filed a motion to compel Ms. Daniels to appear for a deposition on October 18, 2017. (Doc. 15). Mr. Daniels did not file a response. Magistrate Judge David R. Grand granted Esurance's request in part on October 24, 2017, stating:

> Counsel for Plaintiff shall obtain and provide at least two dates for the taking of Ms. Daniels' deposition, and such deposition will be scheduled to take place on or before Friday, November 17, 2017. Ms. Daniels' failure to appear for her deposition as ordered herein may result in an order precluding Plaintiff from offering her testimony at trial and/or striking Plaintiff's claims for household replacement services and attendant care provided by Ms. Daniels.

(Doc. 17 at PageID 134-35). Mr. Daniels' never produced Ms. Daniels for a deposition.

Esurance conducted additional discovery, including hiring an investigator to surveil Mr. Daniels. The investigator followed Mr. Daniels in early February 2017 and summarized his observations in a report dated February 17, 2017. (Doc. 22-23 at PageID 981-1003). The investigator conducted a second round of surveillance in mid-April 2017 and prepared a report dated April 28, 2017. (Doc. 22-23 at PageID 1004-31).

## II. Legal Standard

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 37 and 41

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), if a party or witness designated under Federal Rule of Civil Procedure 30(b)(6) fails to obey an order to provide or permit discovery, the court may issue orders:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> . . .
> (v) dismissing the action or proceeding in whole or in part; . . . .

Federal Rule of Civil Procedure 41 provides for dismissal of an action where the plaintiff has failed "to prosecute or to comply with these rules or a court order." "This measure is available to the district court as a tool to

effect 'management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties.'" *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984)).

**B. Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(c) empowers a court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc) (citing Fed. R. Civ. P. 56(c)). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. There must instead be evidence from which a jury could

reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

### III. Analysis

**A. Motion to Dismiss**

The Court analyzes four factors when deciding dismissal for failure to prosecute pursuant to Rule 41(b); "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Knoll*, 176 F.3d at 363 (citing *Stough v. Mayville Community Sch.*, 138 F.3d 612, 615 (6th Cir. 1998)). These factors have been applied "more stringently in cases where the plaintiff's attorney's conduct is responsible for the dismissal." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997). Typically none of the factors are outcome dispositive. *Id.* "Nevertheless, '[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of

contumacious conduct by the plaintiff.'" *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)). "'Contumacious' is defined as 'perverse in resisting authority' and 'stubbornly disobedient.'" *Schafer*, 529 F.3d at 737 (citing *Webster's Third New International Dictionary* 497 (1986)).

"To support a finding that a plaintiff's actions were motivated by willfulness, bad faith, or fault under the first factor, the plaintiff's conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings.'" *Schafer*, 529 F.3d at 737 (quoting *Wu*, 420 F.3d at 643). As in *Harmon*, Mr. Daniels and his attorney failed to respond to defendant's requests for deposition dates, failed to respond to defendant's motion to compel, and failed to comply with the court's order to produce Ms. Daniels for deposition. *Harmon*, 110 F.3d at 368. This behavior illustrates bad faith. *Id.*; *Schafer*, 529 F.3d at 739 (stating that the plaintiff in *Harmon* "was found to have acted in bad faith because he did not respond to court-ordered discovery requests for several months."). This conduct "shows willfulness and fault in that he was at best extremely dilatory in not pursuing his claim, which indicates an intention to let his case lapse." *Schafer*, 529 F.3d at 739.

"[A] defendant is prejudiced by the plaintiff's conduct where the defendant 'waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Schafer*, 529 F.3d at 737 (quoting *Harmon*, 110 F.3d at 368). Esurance was prejudiced by Mr. Daniels' and his attorney's failure to produce Ms. Daniels for her deposition. Esurance has been unable to take Ms. Daniels' deposition despite repeated requests. Further, Esurance was "required to waste time, money, and effort in pursuit of cooperation which [Mr. Daniels'] was legally obligated to provide." *Harmon*, 110 F.3d at 368.

"[T]he third factor, '[p]rior notice, or the lack thereof, is . . . a key consideration' in determining whether a district court abused its discretion in dismissing a case for failure to prosecute." *Schafer*, 529 F.3d at 737 (quoting *Stough*, 138 F.3d at 615). The Sixth Circuit "has repeatedly reversed district courts for dismissing cases because litigants failed to appear or to comply with pretrial orders when the district courts did not put the derelict parties on notice that further noncompliance would result in dismissal." *Id.* at 737-38 (citing *Wu*, 420 f.3d at 644). Here, there can be no argument that plaintiff was without notice that the district court was contemplating dismissal. Magistrate Judge David R. Grand's October 24, 2017 Order, (Doc. 17), explicitly states that "Ms. Daniels' failure to appear

for her deposition as ordered herein may result in an order precluding Plaintiff from offering her testimony at trial and/or striking Plaintiff's claims for household replacement services and attendant care provided by Ms. Daniels." (Doc. 17 at PageID 134-35).

Finally, "the sanction of dismissal is appropriate only if the attorney's action amounted to failure to prosecute and no alternative sanction would protect the integrity of the pretrial process." *Wu*, 420 F.3d at 644. The Court finds that Mr. Daniels' and his attorney's failure to produce Ms. Daniels for her deposition amounts to failure to prosecute Mr. Daniels' claims for household replacement services and attendant care provided by Ms. Daniels. Mr. Daniels and his attorney had multiple opportunities to avoid the sanction of dismissal. Mr. Daniels' attorney acknowledges that he is responsible for canceling the deposition scheduled for September 19, 2017. (Doc. 26 at PageID 1467). The two prior dates – May 30, 2017 and June 30, 2017 – seem to be mutual decisions to cancel. Esurance appears to have canceled the final scheduled date, September 21, 2017, only after Mr. Daniels and his attorney were unable to confirm Ms. Daniels' presence. Thereafter, Mr. Daniels and his attorney failed to comply with a court order to produce Ms. Daniels for deposition by November 17, 2017. (Doc. 17). This evidence establishes contumacious conduct, which supports the

conclusion that dismissal, as opposed to a lesser sanction, is warranted in this case. *See Harmon*, 110 F.3d at 368-69.

All four factors support the conclusion that Mr. Daniels' and his attorney's conduct amounts to a failure to prosecute his claim. Esurance's motion is therefore GRANTED IN PART. The Court shall dismiss Mr. Daniels' claims for household replacement services and attendant care provided by Ms. Daniels.

**B. Motion for Summary Judgment**

Esurance argues that Mr. Daniels is not entitled to coverage because his policy prohibits fraudulent statements and conduct. The policy states that Esurance will "not provide coverage or benefits for any person who has made fraudulent statements or engaged in fraudulent conduct in connection with any 'accident' or 'loss' for which coverage or benefits are sought under this policy." (Doc. 22-25 at PageID 1093).

"The rules of contract interpretation apply to the interpretation of insurance contracts." *McGrath v. Allstate, Ins. Co.*, 290 Mich. App. 434, 439 (2010). "When the policy language is clear, a court must enforce the specific language of the contract." *Id.* The Court concludes that the language of Mr. Daniels' policy is clear. Esurance will not provide Mr. Daniels any benefits if he has made a fraudulent statement or engaged in

fraudulent conduct in connection with any accident or loss for which he seeks benefits in the instant contested claim.

> To void a policy because the insured has willfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim.

*Bahri v. IDS Property Casualty Insurance Co.*, 308 Mich. App. 420, 424-25 (2014) (internal citations omitted).

Esurance asserts that *Bahri*, stands for the "proposition that Mr. Daniels' fraudulent conduct and fraudulent statements in the presentation of his No-Fault PIP claim renders his entire claim ineligible for coverage." (Doc. 22 at PageID 618). In *Bahri*, the plaintiff purchased a no-fault automobile policy from the defendant on October 12, 2011. *Id.* at 421. The policy contained a general fraud exclusion stating "We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy." *Id.* at 423-24. The plaintiff was involved in an accident on October 20, 2011, and thereafter sought

personal protection insurance (PIP) benefits including daily replacement services from October 1, 2011 through February 29, 2012. *Id.* at 422.

The defendant moved for summary disposition, arguing that, under the terms of the policy, benefits were precluded because of the plaintiff's fraudulent representations. The court granted the defendant's motion, ruling that "because the accident occurred on October 20, 2011, on its face, the document plaintiff presented to defendant in support of her PIP claim is false, as it sought recoupment for services that were performed over the 19 days preceding the accident." *Id.* at 425. The court also reviewed "surveillance evidence depicting plaintiff performing activities inconsistent with her claimed limitations." *Id.*

> Plaintiff was observed bending, lifting, carrying objects, running errands, and driving on the dates when she specifically claimed she needed help with such tasks. Of particular note, on November 11, 2011, plaintiff represented that she required assistance vacuuming, cooking, dishwashing, making beds, grocery shopping, taking out the garbage, driving, and running errands. Yet surveillance videos captured her performing various activities, such as lifting, carrying, and dumping a large bucket of liquid in her yard. On December 19, 2011, plaintiff sought replacement services for various household activities, including grocery shopping. But on that day, she was observed running several errands from 11:05 a.m. until 7:00 p.m. Plaintiff indicated that on December 29, 2011, she required Radwan's assistance to drive her and perform multiple household activities. However,

> surveillance video on that day captured plaintiff
> driving her own vehicle on errands. Similar
> discrepancies were noted for December 30, 2011.

*Id.* at 425-26. The court concluded that this evidence "belies plaintiff's assertion that she required replacement services, and it directly and specifically contradicts representations made in the replacement services statements." *Id.* at 426.

Esurance asserts that Mr. Daniels' committed fraud by submitting claims to Esurance for attendant care and household replacement services provided by Ms. Daniels while simultaneously billing Liberty Mutual for the same care provided at the same time by his daughter, Inez Burgess. Esurance relies on an evaluation summary, dated April 12, 2016, (Doc. 22-9), and a facilitation summary, dated October 26, 2016, (Doc. 22-10). The summaries were prepared by Mr. Daniels' attorney in connection to his lawsuit against Liberty Mutual. Both summaries indicate that Burgess provided household replacement services and attendant care through the "present." At oral argument, Mr. Daniels' attorney noted that the date of service was extended to "present" in the summary reports in order to facilitate a settlement with Liberty Mutual. He further asserts that these summaries are not comparable to the services statements Mr. Daniels submitted to Liberty Mutual, *see* (Doc. 24-5), which claim services from

September 2014 to August 2015; a period that does not overlap with the care allegedly provided by Ms. Daniels'. As such, Esurance has failed to establish that there is no genuine issue of material fact that Mr. Daniels' committed fraud.

Esurance also presents two surveillance reports. (Doc. 22-23). The first report, dated February 17, 2017, details observations of Mr. Daniels' activity on February 1, 6, 11, and 16, 2017. (Doc. 22-23 at PageID 981-1003). Photographs suggest that Mr. Daniels' drove himself and moved a trash can. (Doc. 22-23 at PageID 986-87). The report stated that Mr. Daniels moved in a normal manner. (Doc. 22-23 at PageID 983-84).

Esurance relies on statements Mr. Daniels submitted regarding the care Ms. Daniels provided between October 2016 and February 2017. (Doc. 22-20). From October 2016 to January 2017, Ms. Daniels purportedly (A) cleaned the kitchen; (B) cleaned the bathroom; (C) vacuumed; (D) dusted; (E) washed dishes; (F) cooked; (G) made beds; (H) did laundry; (J) ironed; (K) changed linens; (O) ran errands; (P) took out the trash; and (S) drove Mr. Daniels. (Doc. 22-20 at PageID 819-22). In February 2017, Ms. Daniels purportedly (A) cleaned the kitchen; (B) cleaned the bathroom; (C) vacuumed; (D) dusted; (E) washed dishes; (F) cooked; (G) made beds; (H)

did laundry; (J) ironed; (K) changed linens; and (P) took out the trash. (Doc. 22-20 at PageID 823).

Surveillance indicating that Mr. Daniels was able to drive himself and move a trash can as early as February 1, 2017, does not indicate that he was able to complete the tasks Ms. Daniels allegedly performed for him between October 2016 and February 2017. Unlike the plaintiff in *Bahri*, Mr. Daniels was not observed driving or running errands on a date that he claimed Ms. Daniels provided the same services. Moreover, Mr. Daniels was not observed bending, lifting, or carrying large objects to the same extent present in *Bahri*. Esurance's investigator merely reported observing Mr. Daniels "move[ ] in a normal manner" during the 17.5 hours of surveillance occurring in February 2017. (Doc. 22-23 at PageID 983-84).

Esurance's second surveillance report, dated April 28, 2017, details observations of Mr. Daniels activity on April 17, 23, 25, and 27, 2017. (Doc. 22-23 at PageID 1004-31). It states that Mr. Daniels stood without visible medical aids, drove an automobile, visited Home Depot, carried paint cans, and worked at two rental properties while wearing a medical brace to support his lower back. (Doc. 22-23 at PageID 1004-31). This evidence suggests that, relative to the February 2017 investigation, Mr. Daniels had an increased capacity to complete tasks, but does not prove that he was

able to complete all household and attendant care services on his own. Mr. Daniels' testified to this idea; explaining that his pain decreased following a March 2017 surgery, and while he attempted to assist Ms. Daniels' when he was able, he could not complete all tasks on his own. (Doc. 24-1 at PageID 1224). Esurance has not established that Mr. Daniels made a fraudulent statement by filing claims for services provided by Ms. Daniels.

### IV. Conclusion

For the reasons stated above, Esurance's motion to dismiss is GRANTED IN PART and Esurance's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: May 22, 2018

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 22, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---